PETER McLAREN, plaintiff in error, vs. ELIZABETH LONG, adm'rx, &c., defendant in error.

[1.] In a case of deceit, the purchaser does not lose all right of action, by using the thing purchased, after he discovers the deceit, or even, after a tender back of the thing and a refusal to receive it.

[2.] In an action of deceit, if the property is of any value, that value must be allowed to the defendant, in the assessment of the damages.

Action on the case for deceit, in Muscogee county.   Tried before Judge WORRILL, May Term, 1858.

Davis Long brought an action of deceit, against Peter McLaren, in which he alleged that McLaren had sold him an unsound negro as a sound negro, knowing the negro to be unsound; in another count he alleged that the said defendant and Milton S. Latham as defendant's agent, fraudulently colluded and sold said negro to plaintiff, as a sound negro, when he was unsound, and so known to be by McLaren. Afterwards, Long died, and his widow, Elizabeth, was made a party in his place. On the trial of the case the jury found for the plaintiff, and defendant by his counsel moved for a new trial on the following grounds:

Because the verdict was contrary to the evidence.

Because the verdict is manifestly against the weight of evidence.

Because the Court erred in refusing to charge the jury when requested to do so in writing, that if the proof showed that plaintiff after knowledge of the unsoundness of the slave, and after he tendered him back, and the defendant refused to accept him, used him as her own property, and still continues to do so, that the plaintiff cannot recover in this action.

Because the Court refused to charge as requested in writing, if the jury believe that plaintiff, after he knew of the unsoundness of the negro, retained him and hired him out two or three years, and still retains him in possession, that he cannot recover, although it appears that he first tendered him back to defendant, and defendant refused to receive him.

Because the Court charged the jury, that the measure of damages was the price for which the negro was purchased by the plaintiff, and the interest thereon ; provided, the slave was tendered back in a reasonable time, after the discovery of the fraud, if any.

Because the Court allowed the bill of sale of Latham to be introduced in evidence in this suit, the said Latham not being a party thereto.

### Brief of Evidence.

*Nathaniel Nuckolls* testified, he knew the negro ; saw him a short time after his son-in-law, Long, bought him; looked dropsical; Long applied to Latham to take him back, and Latham refused, saying that McLaren would make the warranty good; McLaren himself acknowledged to agreeing to make the warranty good, but refused to take the negro back, when tendered to him by Long; Latham soon after left for California ; was a young man and had no property.    The negro is now in possession of the administratrix of Davis Long.

Drs. Billing and Bozeman, in connection with Hoxey and Wildman, on examination of said negro, testified, they believed him dropsical at the time of the purchase by plaintiff.

*John R. Hull* testified, the negro was a confirmed drunkard; McLaren sold the negro to Latham for $600, and he was to stay in the store a few days until Latham could see if he could sell him.    In a few days Long called to enquire of McLaren about the negro, defendant said he was a good for nothing drunken dog, and Long said if that was all the trouble he could manage him.    Defendant gave the negro a very bad character for a drunkard, and more than Hull thought he deserved.

*Nimrod Long and Dr. Oliver Walton* testified by interrogatories.    Long says, day after the purchase, Hull called on him to endorse a note made by Davis Long, his son, for the purchase of a negro belonging to defendant, as Hull said.    Hull was a clerk in defendant's store; witness saw the negro a few days after, and thought he was unsound from his inability to do labor.    Walton saw and examined the boy ; thinks he had hydrothorax at the time of the purchase.

*Milton S. Latham* testified, by interrogatories; he purchased the negro of defendant and sold him to Long ; made arrangement at the time that the negro should remain with defendant, and defendant to wait on him for the money until he could sell him; met Long a few days after, and they went

together to defendant's store, to see the negro; Long asked Latham, in the presence of defendant, if the negro was sound, and Latham replied, I don't know, but referred him to McLaren, who said yes, so far as he knew, except that he would get drunk when he got about liquor; and Long replied that if that was all he could manage that, when he got him to his plantation away from liquor; and Long agreed to give Latham his note for $700, McLaren agreed to discount the note for his debt on Latham, which was done; there were no private interviews or collusions between Latham and defendant except as above stated. Defendant gave Latham a warranty bill of sale, and Latham released defendant without consideration, or without money being paid, on the first February, 1850. McLaren, the defendant, did not procure Latham to sell the negro for him; was not to give him anything to sell him at a given price. The bill of sale to Latham from defendant, dated 10 January, 1850, and release on the back to McLaren from Latham, dated the first February, 1851, was read in evidence.

*Philo Wildman*, examined the boy three times, at request of defendant. First time two or three months before the sale; second, a month after; and the third time, about six weeks after the sale. Two first times he thought him healthy, and the last he thought he had incipient dropsy. At the second examination, defendant told Wildman, Long had bought the negro from him; Wildman was a physician.

*Latham* testified, that so far as he knew, the whole transaction was fair on the part of all the parties.

The Court refused the motion for a new trial, whereupon defendant excepted and assigns error.

R. J. MOSES by JOHN A. JONES, for plaintiff in error.

JOHNSON & SLOAN; and DENTON, represented by SLOAN, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The two requests seem to go upon the assumption, that if Long used the negro as his own after his knowledge of the negro's unsoundness; and especially, if he used the negro as his own, after such knowledge and a tender back of the negro, and a refusal by Mr. McLaren to receive the negro, such using of the negro, amounts to an election to consider the negro as sound, and consequently, amounts to a waiver of all right of action in the case.

We do not think, that the law warrants such an assumption. No authority was referred to us in support of the assumption.

There was nothing, then, as we think, in the two grounds consisting of the refusals to charge these two requests.

The Court charged the jury, " that the measure of the damages was the price for which the negro was purchased by the plaintiff, and the interest, provided, the slave was tendered back in a reasonable time after the discovery of the fraud, if any."

This charge would perhaps be right, if Long had elected to *rescind* the contract and *sue for the original purchase money and interest*, as in that case, the parties would have been put *in statu quo*, which would give Long a right to have back his money and the interest on it, and, McLaren, (or Latham,) a right to have back his negro together with the negro's hire. But he did not do this. He sued in deceit—which was really claiming under the contract. The action of deceit, though itself *in tort*, grows out of contract. It is true, that there was evidence showing that an offer was made to return the slave, but it is also true, that there was evidence showing that this offer was refused, and, that Long after such refusal, used the negro instead of abandoning him, and brought suit, in deceit, instead of, in assumpsit. All of which taken together, shows, that although he offered to return the negro, yet that, when the offer was refused, he elected, not to re-

scind the contract, but to hold on to it, and rely upon the right to compensation for the deceit.

What then is it, that would have been the measure of this compensation? The purchase money and the interest thereon? Only in case the negro was utterly worthless. In that case, this might, perhaps, have been the measure of the damages, though, it may admit of a question, whether *interest, eo nomine*, can be given *in tort*. But, the negro was not utterly worthless. He was able to do " a half hand's work;" he hired for $65, in 1854; when his health was last heard from, it had improved." " I think, however, that his health has improved, some," says, Dr. Walton speaking on the 11th of February, 1854.

[2.] We think, then, that the Court ought to have told the jury, that if they found against McLaren, they must allow him in the verdict, the value of the negro, and of his hire. And, therefore, we must grant a new trial.

This makes it unnecessary, to express an opinion on the ground insisting that the verdict was contrary to the evidence; still, as the question is made, we may say that we should find some difficulty in holding that the verdict is not against the *weight of the evidence*.

The only remaining ground of the motion, is, that the Court admitted to the jury, the bill of sale made by *Latham*, the suit being against McLaren. But the great question in the case was, whether or not, this bill of sale though signed by Latham, was not really the bill of sale of McLaren. Long insists, that Latham, in the sale of the negro, was merely acting for McLaren. Whether Long was right or not, was a question for the jury, and on that question, the bill of sale was certainly relevant—so, we see nothing wrong in its admission.

New trial ordered on the ground of the charge.